IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIM. ACTON NO. 11-468-02 |
| v. : | |
| : | |
| EDWIN MEDINA, JR. a/k/a "JUNE" : | |

MEMORANDUM OPINION

**RUFE, J.** June 17, 2015

Before the Court is the Government's Motion to Dismiss Edwin Medina, Jr.'s Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255, and Medina's response thereto. For the reasons that follow, the Government's Motion will be denied.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

On November 15, 2013, pursuant to a plea agreement with the federal government, Medina pled guilty to one count of conspiracy to distribute one kilogram or more of heroin, two counts of possession with intent to distribute heroin and aiding and abetting, one count of possession of a firearm in furtherance of a drug trafficking felony and aiding and abetting, twelve counts of unlawful use of a communication facility. The plea agreement provided for dismissal of several counts of the superseding indictment, including possession of a firearm by a convicted felon, distribution of heroin and aiding and abetting, and possession with intent to distribute 100 grams or more of heroin and aiding and abetting. The federal plea agreement also provided that Medina would also plead guilty to the homicide of Hector Plaza in state court, and indicated that the District Attorney had agreed to recommend that the state sentence run concurrently with the federal sentence, and that the concurrent sentences would be served in federal prison.

No agreement was reached requiring the government to recommend a particular sentence in either the federal or state court. The plea hearing included the following colloquies with Defendant:

Court: "There is no understanding or agreement here as to a specific sentence, is there?"

Medina: "No."[1]

Court: "Whether or not I agree with the parties facts, stipulations, whether or not I accept the recommendations, whether or not I grant motions and requests, do you understand that the Court does not have to sentence you to what anyone else thinks that you're owed?"

Medina: "Yes."[2]

Court: "And as of today you've heard the outlines of the maximum possible penalties you can receive, but you have not heard that there is an agreement between the parties as to a sentence. . . . So, this Court is free to sentence you to anywhere up to the maximum sentence allowed by law, do you understand that?"

Medina: "Yes."[3]

During the plea hearing, the Court also inquired as to the status of the state court homicide case, and Medina's counsel told him that "the plea, that case will—it is unlikely to proceed until this one is completed."[4]

Consistent with this representation, Medina pled guilty and was sentenced in state court only after his federal sentence was imposed. Days after Medina was sentenced to 240 months (20

---

[1] 11/15/13 Change of Plea Hearing Tr. at 30.
[2] *Id.* at 29.
[3] *Id.* at 30.
[4] *Id.* at 39.

years) in federal court, he was sentenced to 8½ -17 years in state court, to run concurrently with his federal sentence and to be served in federal prison.

On June 2, 2014, Medina filed a notice of appeal, but he moved to voluntarily withdraw the appeal before briefing was ordered.[5] The Third Circuit granted the motion to withdraw and dismissed the appeal on September 18, 2014.[6] On June 24, 2014, Medina filed his § 2255 petition in this Court *pro se*. Counsel was subsequently appointed to represent Medina in this §2255 proceeding. Counsel did not file an amended petition, but responded to the government's Motion to Dismiss.

## II. DISCUSSION

### A. Waiver of Right to Collateral Challenge

The government moves to dismiss Medina's § 2255 petition, arguing that Medina waived his right to collaterally challenge the judgment in this case by entering into a plea agreement which included an appellate and collateral review waiver. As the plea agreement states, and as was explained to Medina at the plea colloquy, the agreement he signed strictly limits the types of claims he may bring in his § 2255 petition. However, Medina argues that the current petition is not precluded by the collateral review waiver to which he agreed, as it falls within a delineated exception to the waiver. Specifically, the plea agreement expressly states that Medina was not waiving his right to "file a petition for collateral relief under 28 U.S.C. § 2255 . . . [to] raise a claim that the attorney who represented the defendant at the time of the execution of this agreement and the entry of the defendant's guilty plea provided constitutionally ineffective

---

[5] See United States Court of Appeals, Third Circuit, Doc. No. 14-3030.
[6] *Id.*

assistance during any part of the representation."[7] The Court repeated this exception nearly verbatim during the Change of Plea hearing.[8]

Medina clearly frames his § 2255 petition as raising a constitutionally ineffective assistance of counsel claim. Specifically, he argues that his attorney was ineffective at the sentencing hearing, in that he failed to advise the Court that Medina's state court counsel had negotiated a guilty plea sentencing recommendation for 8½-17 years,[9] concurrent to the federal sentence, in the state court. Instead, in response to direct questions from the Court during the Sentencing Hearing, counsel indicated that Medina's exposure for the third degree murder charge to which he would plead guilty in state court was a 20-40 year sentence, and "the agreement will be that he will get whatever sentence Your Honor imposes today, he will receive the same sentence running concurrently."[10] In light of the Government's recommendation that the Court impose a term of 20 years or less,[11] Medina argues that his attorney's failure to advise the Court as to the terms of the state court plea agreement directly affected the length of the sentence imposed.

Notwithstanding the fact that Medina claims his counsel was constitutionally ineffective at sentencing, the Government argues that Medina knowingly and voluntarily waived his right to collaterally challenge his federal sentence, and the issues Medina seeks to raise do not implicate fundamental rights or constitutional principles and thus do not fall within the limited exceptions to the waiver. The Court agrees that Medina knowingly and voluntarily waived certain appellate

---

[7] Plea Agreement, ¶ 10(c).
[8] 11/15/13 Change of Plea Hearing Tr. at 40.
[9] It is not clear from the present record when that particular agreement with the state prosecutor was reached (or whether the state court judge had discretion in imposing the agreed upon sentence) but Medina suggests that it was reached prior to his sentencing in federal court. State records indicate that Medina formally changed his plea to guilty in state court on the same day he was sentenced there, on June 5, 2014, shortly after he was sentenced in federal court.
[10] 5/30/2014 Sentencing Hearing Tr. at 25-26.
[11] *Id.* at 40-41.

4

and collateral review rights. However, because the plea agreement explicitly stated that Medina was not waiving his right to raise ineffective assistance of counsel claims, and the Court reiterated this information during the plea colloquy, Medina did not knowingly and voluntarily waive his right to claim that his counsel at sentencing was constitutionally ineffective—which is what he claims in the petition before this Court.

B.     **Ineffective Assistance of Counsel**

Although the government's motion only asked the Court to find that Medina had waived the right to seek collateral review, both parties provided briefing as to whether the legal representation complained of in this case was constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test. First, the defendant must demonstrate that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. On the present record, the Court declines to address the first issue; there has been no factual development on the issue of whether Medina's federal court counsel knew or should have known, at the time of this Court's sentencing, that the state court would impose a 8½ - 17 year sentence. However, the Court will address the second issue, which is dispositive.

To show prejudice, Medina must show a reasonable probability that, had his counsel advised the Court of the sentence Medina would subsequently receive in state court, the result of this Court's sentencing proceeding would have been different. This issue does not require factual development or credibility determinations, and therefore the Court can reach this issue on the present record without a hearing.

Medina was afforded due process at sentencing. He was provided the opportunity to review and object to the presentence report prepared by the probation officer, and he filed no

objections. His attorney filed a sentencing memorandum recommending a sentence of 165 months (just under 14 years). He advocated for such a sentence again at the Sentencing Hearing. Before imposing the 20 year sentence, the Court considered all mitigating factors, such as Medina's difficult family history, his intelligence, his willingness to accept responsibility, and his cooperation with the government. However, the Court also heard Medina accept responsibility for shooting and killing Hector Plaza, a competitor in the drug trade, and for being the leader of a significant heroin dealing operation. The Court considered the amount of drugs involved, and the use of firearms to protect his interests.

The Court also considered the significantly greater exposure Medina would face if sentenced according to the statutory minimums and sentencing guidelines: he was facing a statutory minimum of 30 years (20 years for distribution of more than a kilogram of heroin, pursuant to 21 U.S.C. § 841(b)(1)(A),[12] plus 10 years for carrying or using a firearm in relation to a drug trafficking crime, which must run consecutively to any other term of imprisonment, , under 18 U.S.C. § 924(c)), and a sentencing guidelines range of 30 years to life in prison, plus a 10 year term which must run consecutive to that range, based upon a total offense level of 42 and a criminal history category of II.[13]

The government moved for a downward departure pursuant to 5K1.1 of the Guidelines and § 3553(e), acknowledging Medina's substantial assistance to the government. However, the government reminded the Court that Medina had "acknowledged his role as the leader of the Medina street corner operation at Swanson and Somerset Streets. They were selling bundled, packaged, branded heroin, essentially 24-hours-a-day at least six days a week and over a three

---

[12] The statutory minimum was 20 years, rather than 10, because Medina had a prior felony drug conviction.
[13] U.S.S.G. Chapter 5, Part A.

year period."[14] He oversaw at least five "caseworkers" and drug sellers, selling approximately a kilogram of heroin each month.[15] The government also reminded the Court that Medina admitted killing Hector Plaza, an overt act in furtherance of a drug conspiracy, that the government had seized four firearms from Medina's residence, used to protect his drug interests, and that he was operating "an extremely violent operation."[16] The government opined that the 165 months Medina was requesting was too great a departure, but recommended 20 years or less.[17]

The Court was aware that the parties had agreed that the state and federal sentences would run concurrently and be served in federal prison, and, at sentencing, Medina's lawyer told the Court that the state court would not impose a sentence greater than that imposed by the federal court. Thus, with the understanding that, although Medina's statutory exposure in state court for the homicide was 20-40 years, this Court's sentence would be determinative of the length of time Medina would serve, the Court sentenced him to 20 years. This was a significant downward departure—10 years below the statutory minimum, and 20 years below the low end of the guidelines range—in recognition of his cooperation with the government. However, because of Medina's level of involvement in the heroin trade, his use of firearms to protect his trade, and the consequences to the community, the Court would not have departed below the 20 year sentence even if it had known the sentence Medina would receive in state court. The Court believed, and still believes, 20 years, and no less, was the appropriate sentence in light of all the circumstances presented to the Court.[18] Because the Court would have imposed a 20 year

---

[14] 5/30/2014 Sentencing Hearing Tr. at 8.
[15] *Id.* at 9.
[16] *Id.* at 38.
[17] *Id.* at 38, 40-41.
[18] The Court stated: "I would be negligent if I ignored that he has been deep into the drug dealing scene to the point where killing someone to protect one's turf is not uncommon, and that's what happened in this case." 5/30/2014 Sentencing Hearing Tr. at 27-28. And later the Court noted his cooperation with the government, but added: "I will give you credit for that, but I won't ignore how serious your crimes have been." *Id.* at 34-35.

7

sentence even if it had known the sentence the state court would be imposing for the homicide, Medina cannot show that counsel's failure to provide this information prejudiced him at sentencing. Accordingly, Medina's § 2255 petition is denied.